**ROBERT M. BERNSTEIN, Esq. SBN #183398**
Robert@California-Law.org
9595 Wilshire Boulevard., Suite 900
Beverly Hills, CA 90212
Telephone: (310) 477-1480
Facsimile: (310) 477-1468

Attorney for defendant
**ANTHONY MARTINEZ**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY MARTINEZ<br><br>Defendant. | Case No. 19-cr-00609-5-MWF<br><br>**DEFENDANT ANTHONY MARTINEZ' SENTENCING POSITION**<br><br>Sentencing Date: 5/17/2021<br>Sentencing Time: 1:30 p.m. |

Defendant, Anthony Martinez, through his attorney of record, Robert M. Bernstein, submits this sentencing position and exhibits.

DATED: May 10, 2021

                                                       Respectfully submitted,

                                                       /S/ *Robert M. Bernstein*
                                                       ROBERT M. BERNSTEIN
                                                       Attorney for Defendant
                                                       **ANTHONY MARTINEZ**

**TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................1

II.  DEFENDANT'S RESPONSE TO
     USPO'S GUIDELINES' CALCULATIONS. ......................................................1

III. ONE HUNDRED AND SIXTY-EIGHT MONTHS IN PRISON IS A SUFFICIENT
     SENTENCE FOR MR. MARTINEZ. ..................................................................1
     (i) Nature and Circumstances of The Offense ..................................................2
     (ii) Mr. Martinez' History And Characteristics ................................................3
            Mr. Martinez' childhood and youth .......................................................3
            Mr. Martinez' longstanding struggle with substance abuse ....................3
            Mr. Martinez' goals for the future .........................................................6
     (iii) Sentencing Goals .......................................................................................6
     (iv) The Guidelines Range ...............................................................................6
     (v) Unwarranted Sentence Disparity ................................................................8
     (vi) Fine; Denial of Federal Benefits ................................................................8

IV.  CONCLUSION. ...................................................................................................8

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION.**

Defendant, Anthony Martinez, a 40-year-old man, comes before this Honorable Court for sentencing, having pled guilty to possession with intent to distribute Cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(ii). The United States Probation Department recommends a sentence of 247 months, which includes a 15-month variance pursuant to §5K2.23. The Probation Officer also states that he considered a further variance based on Martinez' personal history and characteristics, but ultimately decided against recommending one. The defense agrees with the recommended 15-month variance, however, disagrees and respectfully suggests a significant variance based on Martinez' extensive childhood trauma which led to a lifelong history of substance abuse. Further, the defense believes that the defendant is entitled to a 2-level COVID variance which has been offered by the United States Attorney's Office throughout the pandemic to similarly situated defendants with similar charges. As explained below, the defense believes that a 168-month prison term is sufficient but not greater than what is necessary and would achieve all the 18 U.S.C. § 3553(a) sentencing goals.

**II.    DEFENDANT'S RESPONSE TO USPO'S GUIDELINES' CALCULATIONS.**

Defendant agrees in part and disagrees in part with the USPO's final calculation of a guideline offense level of 34 (Discussion of the defense disagreement is discussed below) and agrees with the defendant's criminal history (category VI). PSR at ¶¶ 27 - 36 [offense level]; ¶¶ 40 – 57 [criminal history].

**III.   ONE HUNDRED AND SIXTY EIGHT MONTHS IN PRISON, IS A SUFFICIENT SENTENCE FOR MR. MARTINEZ.**

One of the most important principles of sentencing, if not the most important, is that the punishment imposed should "fit the offender and not merely the crime." *Williams v. New York*,

337 U.S. 241, 247 (1949); *Wasman v. United States*, 468 U.S. 559, 564 (1984) (discussing why sentencing courts consider the widest possible breadth of information about a defendant so as to ensure that punishment will suit not merely the offense but the individual defendant).   Further, under the Sentencing Reform Act, district courts are required, for each defendant that comes before them, to assess that individual and his or her criminal conduct, and then fashion a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a) In doing so, courts should consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed –
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established [by the Sentencing Commission in the Guidelines] . . .
> (5) any pertinent policy statement [issued by the Sentencing Commission] . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

### (i) Nature and Circumstances Of The Offense

Here, as set forth in the plea agreement (¶ 12), the PSR (at ¶¶ 17 – 21) the factual basis for Mr. Martinez' in Count 7 of the Indictment is that he was in possession of a total of 118.22 kilograms of cocaine with the intent to distribute.   When law enforcement tried to stop his vehicle, he initially stopped, but then drive off and evaded them - driving in a reckless manner posing a danger to others. His vehicle contained 34.09 kilograms of cocaine. Later, a search of a storage unit discovery additional cocaine raising his total possession to 118.22 kilograms.

(ii) **Mr. Martinez' History and Characteristics**

**Mr. Martinez' childhood and youth**

Anthony Martinez was born and raised in Los Angeles, the eldest of seven children. His childhood was scarred by substance abuse issues, brutal child abuse, and mental health crises. As a victim of child abuse and trauma Martinez grew up feeling unloved, unsafe, and unprotected throughout his entire childhood. (PSR ¶ 68)

As Anthony was growing up, his father's alcoholism cast a dark shadow over the family. His father's drinking often led to heated arguments with his wife and other family members. As a result, Anthony's father beat him regularly with fists, belts, and other objects. These beatings resulted in marks, scars, and bruising. As Anthony grew older, he took beatings from his father to protect his younger siblings from his father's abuse. (PSR ¶¶ 68 -69). Further, Anthony's mother suffered from ongoing and untreated mental health issues which contributed to an even more chaotic and unstable childhood and home life. (PSR ¶63).

**Martinez' longstanding struggle with substance abuse**

Mr. Martinez's has struggled with substance abuse most of his life.   By his teen years, Anthony had turned to drugs and alcohol to escape his horrific family environment.   At 16 years old Anthony was drinking daily and smoking marijuana. Shortly thereafter he was introduced to heroin by a family member. He found that heroin altered his mind and allowed him to escape his pain and childhood trauma.   By the time Anthony was 18 years old, he had developed a crack cocaine addiction. And, at age 19 Anthony began abusing methamphetamine, which led to daily usage for many years. In addition, Anthony frequently abused Vicodin and Seroquel and in 2019 he overdosed on a combination of 90 milligrams of oxycodone and methamphetamine. (PSR ¶¶ 75-82)

Mr. Martinez' longstanding and entrenched drug use and abuse has undoubtedly had a profoundly negative effect on his life and along with the effects of his childhood trauma is almost

3

certainly the primary reason for his repeated arrests.   Regardless, Mr. Martinez is genuinely focused on changing his life trajectory, getting mental health treatment, and overcoming his addiction. (PSR ¶ 83)

Mr. Martinez' childhood trauma cannot be ignored or dismissed when considering his history and characteristics. Medical research over the last 30 years has proven that children who grow up suffering trauma, and / or with feelings of being unloved and unsafe has a direct effect on their brain development. (See, "*The Biological Effects of Childhood Trauma*" Michael D. De Bellis, M.D. MPH and Abagail Zisk A.B. National Institute of Health.)

Childhood and adolescence are critical developmental times when neural pathways are being formed that can be significantly altered by traumatic events. These changes in the pathways caused by childhood trauma affect adults as their brains are "wired differently than other adults." (Id.)   When experiences are traumatic, the pathways getting the most use are those in response to the trauma; *this reduces the formation of other pathways needed for adaptive behavior*. Trauma in early childhood can result in disrupted attachment, cognitive delays, and impaired emotional regulation and impairment later in life (Supra, citing Perry, 1995, 2009).

These changes in the pathways to the prefrontal cortex affect the person's ability as an adult to think critically - it alters their adaptive behavior and decision making. It affects adult's ability to regulate impulses, to reflect on their actions and consequences and to be introspective. (See, "*The Road to Adulthood, Aligning Child Welfare Practice with Adolescent Brain Development*," By the Annie E. Casey Foundation, July 22, 2017).

Courts throughout the county and the United State Probation Department acknowledge the important issue of childhood trauma on brain development. In fact, the United States Probation

4

Department now includes an ACE (Adverse Childhood Experience) questionnaire as part of their preparation of a PSR.

Defendant acknowledges his lengthy criminal history, however, posits that his altered childhood brain development and years of substance abuse has resulted in his re-offending and his incarceration for most of his adult life.

Now that these issues are better understood there are substance abuse and trauma mental health programs and treatments being offered by the Bureau of Prison and by the United States Probation. Mr. Martinez is seeking all available treatment to overcome these issues. (see "*Directory of National Programs Federal Bureau of Prisons - A practical guide highlighting reentry programs Available in the Federal Bureau of Prisons*." 5/18/2017)

**Mr. Martinez' goals for the future**

Mr. Martinez' principal goals for his future are to (i) maintain his break from drug use, (ii) obtain proper mental health treatment to learn how to overcome his childhood trauma, (iii) continue to take classes and learn skills, and (iv) learn a trade so he can find work to support himself and his child.   He has been trained in fire suppression while in CDCR between 2001 and 2005. Martinez received firefighting training from Trinity River Fire Camp in Shasta County, while he was housed in Susanville, California. He became leader of a pack after two years and made fire lines during wildfires. He indicated that he received a letter of recommendation from the fire captain. After Martinez was paroled, he began training with Fuego Tech Rangers. Part of this training required that he be on-call to respond to forest fires on short notice, but since his parole

5

would not allow lengthy travel without 48 hours' notice, he could not continue with the training program. (PSR ¶87)

### (iii) **Sentencing Goals**

The main goals of the Court's sentence would appear to be to: (1) punish Mr. Martinez for his criminal conduct, (2) protect the public, (3) promote deterrence and respect for the law, and (4) provide Mr. Martinez the opportunity to rehabilitate. Given his offense conduct and his personal characteristics a 168-month prison term is sufficient to punish Mr. Martinez for his criminal conduct, protect the public, and promote deterrence and respect for the law.

### (iv) **The Guidelines Range**

The USPO recommends a 15-month variance pursuant to USSG §5K2.23, and a sentence of 247 months imprisonment as sufficient but not greater than necessary to comply with the purposes of sentencing. This variance is recommended by the USPO as Martinez served approximately 15 months in custody for Orange County Superior Court Docket No. 19NF3030 prior to being arrested for the instant offense.

Notably, the USPO states a further variance was considered based on Martinez's personal history and characteristics in that he suffered abuse as a child and has an extensive history of substance abuse, but the USPO ultimately decided against this recommendation. (USPO Recommendation letter to Court, Page 7)

The Defense disagrees with USPO' s conclusion against a further variance and submits that this Honorable Court should apply an addtional variance to Mr. Martinez and impose a sentence of 168 months.

Specifically, defendant disagrees with the USPO and asserts that several facts support of a variance, including:

· Mr. Martinez' childhood abuse, trauma and altered brain development.

· His father's alcoholism and violent arguments, his mother's mental health issues.

· Mr. Martinez' profoundly serious multi-substance abuse issues since age of 16

 -His desire for treatment and rehabilitation. and

· that Mr. Martinez has used his time in custody since being arrested in a very productive and positive manner.[1]

(v) **Unwarranted Sentence Disparity:**

Pursuant to § 3553(a)(6), the Court must strive to avoid unwarranted sentence disparities amongst defendants who have similar criminal histories and were found guilty of similar conduct. In so doing, the Court can consider other federal and state cases. See *United States v. Garrison*, 560 F. Supp. 2d 83 (D. Mass. 2008) (departing downward based on extensive review of sentences and backgrounds of unrelated defendants arrested in the same federal-local drug enforcement sweep as Garrison, noting that Guidelines are not good way of determining which defendants are "similarly situated" because they "mask real differences between offenders" and create "false uniformity"); *United States v. Wilkerson*, 411 F.3d 1 (1st Cir. 2005) (remanding for resentencing where district judge "repeatedly expressed his concern about disparate treatment between federal and state court sentences in similar cases, but stated that the Guidelines did not permit him to take that disparity into account"); *United States v. Mapp*, 2007 WL 485513 (E.D. Mich. Feb. 9, 2007) (departing downward in part based on state and federal sentencing disparity, where defendant noted that in state prosecution, he would be facing nine to forty-six months prison as felon-in-possession, while he was facing 84-105 in federal prosecution).

---

[1] See attached letter in support from Mr. Martinez' Case Manager at MDC, Julius Q. Roberts.

7

Defendant contends that throughout the pandemic the USAO's office had consistently offered similarly situated defendants who have been charged with identical crimes a 2-level downward variance known as the "COVID Variance." To obtain this variance the defendants were required to plead guilty in a timely manner and agree to make all court appearances by VTC. The application of this variance was arbitrary and capricious, denying some and benefiting others with no clear or rational policy basis for who received the variance.

For this reason, the defense believes that this court should apply the variance which other similarly situated defendants received and adjust the guideline offense level by two levels to a total offense level of (32) to avoid unwarranted sentencing disparity.

Finally, the defense also believes it is important for the Court to consider, more generally, the effect of race and class on sentence length. A good example can be found in the so-called "college admissions scandal" case. The defendants in that case aren't "similarly situated" to Mr. Martinez, but it's impossible not to notice the rather profound effect of race and class when comparing the types of sentences deemed appropriate for and imposed on defendants like Mr. Martinez – poor and/or minority and convicted of a drug crime in a case like the instant one – with those considered appropriate for and imposed on defendants who are, by all metrics, the most privileged is society.

### (vi) **Fine; Denial of Federal Benefits**

Mr. Martinez has neither the assets nor disposable income to pay a fine. Accordingly, the defense asks that the Court not impose a fine or other financial penalty on him, nor that he be denied federal benefits.

## IV. CONCLUSION.

More than ever before, with all the discussion about the effect of race and class in the criminal justice system, courts should not assume that a Guidelines sentence is reasonable and fitting. The Court here should conduct an independent review of the sentencing factors aided by

8

the parties' arguments. See *United States v. Booker,* 543 U.S. 220, 245-46 (2005); *United States v. Cavera*, 550 F.3d 180, 189 (2nd Cir. 2008) (en banc).   Each defendant before the court is entitled to be treated as an individual. *GMM ex rel. Hernandez-Adams v. Kimpson,* 116 F. Supp. 3d 126, 152 (E.D.N.Y. 2015) (emphasizing the importance of "the myriad factors affecting an individual's capacity to fulfill his or her potential.") As the Supreme Court has emphasized, "punishment should fit the offender and not merely the crime." *Pepper v. United States*, 131 S. Ct. 1229, 1240 (2011).

      Based on the foregoing, the defense disagrees with the USPO's conclusion that there is not any reason to vary further from the Guidelines range.   The Defense submits that a 168-month prison term is certainly sufficient to punish, deter, protect the public, and fulfill all the other § 3553 sentencing goals.   Given all the relevant facts and considerations, anything beyond that for Mr. Martinez would be "greater than necessary."

DATED: May 10, 2021                                             Respectfully submitted,


                                             *S/ Robert Bernstein*
                                       ROBERT M. BERNSTEIN
                                       Attorney for Defendant
                                       **ANTHONY MARTINEZ**

U.S. Department of Justice

Federal Bureau of Prisons

*Metropolitan Detention Center*

535 N. Alameda Street
Los Angeles, CA 90012

To Whom it May Concern

I write this letter in support of inmate Anthony Martinez reg. 44575-112, a inmate I was privileged to have on my caseload while being a Case Manager of Metropolitan Detention Center, Los Angeles, California. Over the period of two years I had the opportunity to guide and speak with this man, which provided me an insight into both his background and character.

The actions you judge him for today are serious and should not be taken lightly. I have lost ones close to me for similar lapses of judgment. Momentary mistakes in time which have the potential for lifelong impacts; Anthony perhaps better than most who appear before you understands consequences of his decisions. His life, like all of ours, has been challenged with serious difficult decisions. He has since consistently made the right choices, decisions which have helped shape his character.

When he told me about his crime, I was surprised as they were not consistent with the man I knew. Growing up in the streets of Los Angeles is naturally a stressful environment. Throughout my 15 plus years in law enforcement both juvenile and adults I have seen stress and decisions overwhelm good people. I took the opportunity to talk with him, I wanted to understand where he was mentally, to determine what caused the incidents we are talking about now. True to his character, Anthony accepted his actions and provided no excuses. Anthony is one of my head orderlies and has to be trusted on a daily around other inmates and staff.

Anthony, like all of us, is an imperfect person; however he strives to be better himself. A brief review of his life was stressful but with this time he has better himself and taken the roll as a leader. Also speaking with younger inmates to help them out so they don't end up in the same place if they get a second chance. As Case Manager, I understand his character. He is a pleasure to have around and a great asset for knowledge and personal life ups and downs.

Sincerely,

Julius O. Roberts